## John J. Kemp and Henry C. Lowrey
### v.
## W. T. M. Miller.

*Sales—Horse—Warranty — Action for Breach of—Warranty Executed by One of Two Partners—Whether Other Partner Bound.*

In an action to recover damages for the breach of a warranty of a horse bought by plaintiff, where the defense was that the horse was the individual property of one of the defendants who executed the warranty, and that he had no authority to sign his partner's name to the warranty, this court holds that the evidence entirely failed to support this defense.

[Opinion filed April 11, 1892.]

APPEAL from the Circuit Court of McLean County; the Hon. C. D. MYERS, Judge, presiding.

Mr. F. Y. HAMILTON, for appellants.

Messrs. BENJAMIN & MORRISSEY and W. B. CARLOCK, for appellee.

Mr. Justice Wall. This was an action by appellee against appellants for damages by reason of a breach of warranty given upon the sale of a horse. The case was tried by the court, a jury being waived, and the issues were found for the plaintiff below. Judgment was for $300. The main question was whether defendants made the warranty. It was in writing and was executed by Lowry, he signing Kemp's name and his own. Kemp & Lowry were partners in the business of importing and selling horses and they were in the habit of giving warranties in the form used in this instance, but it is insisted this animal belonged to Kemp and not to the firm, and therefore Kemp is not bound by it. Kemp & Lowry had a public sale of horses which was attended by Miller. The animal in question had been put up and after $200 had been offered for her Kemp asked Miller to bid her up to $450, and if she was knocked off to him he need not take her. He wanted this done to start the sale. Miller bid her up to $300, and she was knocked off to him. After the sale was over Miller was told he could have her at the bid if he wished her but he said he would not take her at that or any price unless she was warranted sound, as she appeared to be affected with some disorder. Kemp and Lowry both said there was nothing serious, that she was only suffering from the consequences of the sea voyage. Miller, however, persisted in requiring a warranty and Lowry finally told him he could have it. Miller said he would decide whether to take her on the following Saturday, and it was arranged that if he concluded to take her he could leave his check for the amount with Mrs. Lowry, as neither Lowry nor Kemp would be there that day. Miller took the animal on Saturday and left a certificate of deposit issued by a bank in Bloomington for $300, which he indorsed to Kemp & Lowry. Afterward Lowry gave the warranty in question, using one of the firm's blanks for the purpose. The animal subsequently died of a disease which she had when the sale was made. The certificate of deposit was indorsed by Kemp & Lowry, and the firm no doubt received the money.

Without attempting to state or even refer to all the evidence we are satisfied with the conclusion reached by the court. The bid made by Miller was not intended to bind him, and was in fact a nullity. The animal still belonged to the firm and was sold for the benefit of the firm. Lowry had authority to make the warranty, and the fact that he signed the individual names of himself and Kemp and not the firm name is not very significant.

It was understood by Miller, as he knew, to be a partnership transaction. It is quite likely Kemp & Lowry were a little dubious of the animal and wanted to sell without the warranty, but it was found to be impossible. The pretense that the animal belonged to Kemp and not to Kemp & Lowry, is not entitled to serious consideration.

We think the judgment is according to the merits and that it should be affirmed.

*Judgment affirmed.*